# IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
### CIVIL DIVISION

| | | |
|---|---|---|
| MEDICAL, INDUSTRIAL AND SCIENTIFIC PRODUCTS, INC., (an Alabama corporation) located at 3335 N. Springfield Avenue, Chicago, IL 60618 | ) ) ) ) ) | Case No: |
| | ) | JUDGE_____ |
| Plaintiff, | ) ) | MAGISTRATE_____ |
| | ) | |
| v. | ) ) | CIVIL COMPLAINT WITH JURY DEMAND ENDORSED HEREON |
| JORDAN MEDICAL GROUP LIMITED LIABILITY COMPANY (an Ohio limited liability company) With STATUTORY AGENT: SULEIMAN A. REFAEI 8933 Terwilligers Trail Cincinnati, OH 45249 | ) ) ) ) ) ) ) ) | INSTRUCTIONS TO CLERK: SERVICE BY CERTIFIED MAIL REQUESTED AND ATTACHED WITH INSTRUCTIONS FOR FIRST CLASS MAIL WAIVER ALSO ATTACHED SHOULD THERE BE A FAILURE OF CERTIFIED MAIL SERVICE. |
| AND | ) ) | |
| SULEIMAN A. REFAEI (an Ohio resident) living at 8933 Terwilligers Trail Cincinnati, OH 45249 | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

NOW COMES Plaintiff, Medical, Industrial and Scientific Products, Inc., an Alabama corporation (hereinafter, "Plaintiff"), by and though its attorneys, and for its Complaint against Defendants, Jordan Medical Group Limited Liability Company, an Ohio limited liability company, (hereinafter, "Defendant Jordan"), and Suleiman Refaei, (hereinafter, "Defendant Refaei") states as follows:

## PARTIES

1.    Plaintiff is an Alabama corporation and is a party to a written contract which is the primary subject of this lawsuit, a copy of which is attached hereto as Exhibit A (hereinafter, the "Contract").

2.    Defendant Jordan is an Ohio limited liability company and is the other party to the Contract.

3.    Defendant Refaei is an individual with personal liability for specific causes of action set forth herein related to the Contract, and is further liable individually for his own tortious misconduct related to the Contract, and otherwise.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action because it involves civil claims for money damages that exceed $15,000, which arose out of the Contract entered into within the State of Ohio.

5.    Venue is appropriate with this Court, as the Defendants reside and do business in this district, and a substantial part of the events or omissions giving rise to the claim(s) herein occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district.

## BACKGROUND FACTS

6.    On October 12, 2020, Defendant Jordan and Plaintiff executed the Contract whereby Defendant Jordan agreed to sell, convey title, and transfer possession of a linear accelerator, Varian Model 21iX, Serial # 1138, complete with all its components, inclusive but not limited of its spare parts and manuals (hereinafter the "Linear Accelerator"), to Plaintiff in exchange for payment of One Hundred Thirty Thousand Dollars ($130,000.00).

2

7.      Pursuant to the Contract, the Linear Accelerator was to be stored at a storage facility until Plaintiff arranged for its shipping.

8.      Pursuant to the Contract, Plaintiff agreed to pay Defendant Jordan a total of $4,000.00 for storing the Linear Accelerator.

9.      Plaintiff made all required payments to Defendant Jordan pursuant to the Contract.

10.     Specifically, on June 12, 2020, Plaintiff paid by wire transfer to Defendant Jordan the sum of $36,206.00.

11.     On July 22, 2020, Plaintiff paid by wire transfer to Defendant Jordan the sum of $19,955.00.

12.     On September 11, 2020, Plaintiff paid by wire transfer to Defendant Jordan the sum of $19,955,00.

13.     On October 14,2020, Plaintiff paid by wire transfer to Defendant Jordan the sum of $53,884.00.

14.     On October 29, 2020, Plaintiff made an online transfer to Defendant Jordan the sum of $4,000.00.

15.     Despite receiving all the required payments from Plaintiff, totaling $134,000 dollars covering the entire purchase price and the storage fees, Defendants refuse to convey title and transfer possession of the Linear Accelerator to Plaintiff.

16.     Defendants also refuse to notify the storage facility storing the Linear Accelerator, in writing, that ownership of the Linear Accelerator has been conveyed to Plaintiff.

17.     Defendants' refusal to convey the Linear Accelerator is a willful and malicious breach of the Contract.

18.     Defendants' refusal to convey the Linear Accelerator constitutes a deliberate, premeditated breach of the Contract.

19.     Knowing that the Linear Accelerator is a medical treatment device that could be in use saving lives and treating cancer patients, Defendants still refused to release the Linear Accelerator after full payment was received.

20.     Defendants have indicated that they will only release the Linear accelerator to Plaintiff upon receipt of an additional $25,000, indicating that the extra payment is because Plaintiff must "pay his dues."

21.     Defendants' behavior shocks the conscience.

22.     On November 18, 2020, Plaintiff sent a formal demand for the immediate delivery of the Linear Accelerator. Attached hereto as Exhibit "B" is a true and correct copy of Plaintiff's November 18, 2020, Demand Letter.

23.     Despite Plaintiff's repeated oral and written demands, Defendants refuse to transfer ownership of the Linear Accelerator.

## COUNT I - BREACH OF WRITTEN CONTRACT

24.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

25.     At all relevant times, a valid and enforceable Contract existed between the Plaintiff and Defendant Jordan.

26.     At all relevant times, Defendant Jordan was contractually obligated to convey title and transfer possession of the Linear Accelerator and notify the storage facility storing the Linear Accelerator, in writing, that ownership of the Linear Accelerator has been conveyed to Plaintiff.

4

27.     Defendant Jordan breached its obligations by failing to convey title and transfer possession of the Linear Accelerator and by failing to notify the storage facility storing the Linear Accelerator, in writing, that ownership of the Linear Accelerator has been conveyed to Plaintiff.

28.     Plaintiff fully performed each and every one of its obligations pursuant to the Contract.

29.     Despite Plaintiff's full performance and despite Plaintiff's repeated oral and written demands, Defendant refuses to perform its obligations pursuant to the Contract.

30.     As a result of Defendant's breach, Plaintiff has suffered damages in the form of economic losses including, but not limited to the One Hundred Thirty-Four Thousand Dollars ($134,000.00) purchase and storage fees paid, lost profits, loss of goodwill with the client to whom the Linear Accelerator would be sold, plus attorney fees, and costs.

31.     Because of the willful and malicious nature of Defendant Jordan's breach, Plaintiff is further entitled to punitive damages and recovery of all legal fees in pursuing this cause of action to serve as a deterrent against future behavior.

### COUNT II - CONVERSION OF THE LINEAR ACCELERATOR

32.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

33.     After receiving full payment from Plaintiff, Defendant Jordan and Defendant Refaei refused to transfer ownership of the Linear Accelerator.

34.     Accordingly, Defendants have unlawfully converted Plaintiff's purchased Linear Accelerator without authorization.

35. Plaintiff made written demand for the immediate delivery and transfer of ownership for the Linear Accelerator, upon full payment of the purchase price to the Defendant Jordan, as set forth in Exhibit "B".

36. Despite Plaintiff's demand, Defendants refuse to transfer ownership of the Linear Accelerator to Plaintiff.

37. Defendants continue to hold Plaintiff's Linear Accelerator up through the time of the filing of the instant Complaint.

38. The Defendants' refusal to transfer ownership of the Linear Accelerator to Plaintiff is vexatious.

39. At the time and place of the conversion as alleged above, the market value of the Linear Accelerator was One Hundred Thirty-Four Thousand Dollars ($134,000.00), which Plaintiff is entitled to recover, as well as statutory legal interest on the value of the property from the date of the conversion through the satisfaction of judgment.

40. The taking and conversion of the Linear Accelerator by Defendants was done with a callous, willful, and wanton disregard for Plaintiff's rights in that Defendants knew at all times relevant herein that Plaintiff is the owner of the Linear Accelerator.

41. Knowing that the Linear Accelerator is a medical treatment device that could be in use saving lives and treating cancer patients, Defendants still refused to release the Linear Accelerator after full payment was received.

42. Defendants' refusal to deliver the Linear Accelerator to Plaintiff, despite having received a demand for the same, is malicious, and shocks the conscience.

6

43.     The conduct of Defendant is so outrageous that an award of compensatory damages is inadequate and punitive damages and recovery of all legal fees in pursuing this cause of action should be awarded to Plaintiff to deter future misconduct from these Defendants.

**COUNT III - CONVERSION OF THE $134,000**

44.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

45.     After receiving full payment from Plaintiff, Defendant Jordan and Defendant Refaei refused to transfer ownership of the Linear Accelerator.

46.     Accordingly, Defendants have unlawfully converted Plaintiff's One Hundred Thirty-Four Thousand Dollars ($134,000.00) without authorization.

47.     On April 6, 2021, Plaintiff made written demand for the immediate delivery and transfer of the One Hundred Thirty-Four Thousand Dollars ($134,000.00) paid to Defendant Jordan.  A copy of the demand for payment is attached hereto as Exhibit C.

48.     Despite Plaintiff's demand, Defendants refuse to return to Plaintiff the One Hundred Thirty-Four Thousand Dollars ($134,000.00) paid to acquire the Linear Accelerator.

49.     Defendants continue to hold Plaintiff's One Hundred Thirty-Four Thousand Dollars ($134,000.00) up through the time of the filing of the instant Complaint.

50.     Defendants have converted the One Hundred Thirty-Four Thousand Dollars ($134,000.00) to their own personal use.

51.     Defendants' refusal to return the One Hundred Thirty-Four Thousand Dollars ($134,000.00) to Plaintiff is vexatious.

52.     At the time and place of the conversion as alleged above, the value of the money converted to Defendants' use was One Hundred Thirty-Four Thousand Dollars ($134,000.00),

7

which Plaintiff is entitled to recover, as well as statutory legal interest on the value of the money from the date of the conversion through the satisfaction of judgment.

53. The taking and conversion of the Plaintiff's money by Defendants was done with a callous, willful, and wanton disregard for Plaintiff's rights in that Defendants knew at all times relevant herein that Plaintiff was entitled to the return of the money.

54. Knowing that the money was to be used to purchase a Linear Accelerator, a medical treatment device that could be in use saving lives and treating cancer patients, Defendants' refusal to return the One Hundred Thirty-Four Thousand Dollars ($134,000.00) so that an alternate Linear Accelerator could be purchased is malicious and shocks the conscience.

55. The conduct of Defendants is so outrageous that an award of compensatory damages is inadequate and punitive damages and recovery of all legal fees in pursuing this cause of action should be awarded to Plaintiff to deter future misconduct from these Defendants.

## COUNT IV – FRAUD

56. Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

57. Pleading in the alternative, and without intent to diminish the arguments set forth in all prior counts of this Complaint, Plaintiff states as follows.

58. To induce Plaintiff to send Defendants One Hundred Thirty-Four Thousand Dollars ($134,000.00), Defendants made knowingly false representations of material facts and/or intentionally concealed material facts from Plaintiff.

59. The misrepresentations were made in writing and verbally prior to entering into the contract to purchase the Linear Accelerator.

8

60.     Defendants made misrepresentations and omissions in the age of the Linear Accelerator. Specifically, the Linear Accelerator was discovered to be older than originally represented.

61.     Defendants made misrepresentations and omissions in the condition of the Linear Accelerator.  A Linear Accelerator is required to be stored with power supplied to it to avoid being damaged, and this Linear Accelerator was not stored correctly.

62.     Defendants made misrepresentations and omissions about the ability and/or willingness to transfer ownership of the Linear Accelerator to Plaintiff.

63.     Defendants made misrepresentations and omissions about their willingness to transfer ownership of the Linear Accelerator to Plaintiff for the agreed upon amount, later demanding additional money after the entire agreed upon purchase amount was paid.

64.     Defendants intended to mislead Plaintiff into relying on the above false representations and omissions.

65.     Plaintiff in fact relied on, and was justified in relying upon, Defendants' fraudulent representations and omissions.

66.     Unbeknownst to Plaintiff at the time of entering into the Contract, Defendants have a history of making misrepresentations and omissions about their willingness to transfer ownership of medical equipment to purchasers for the agreed upon amount, later demanding additional money after the entire agreed upon purchase amount was paid.

67.     Defendants' history of making misrepresentations and omissions about their willingness to transfer ownership of medical equipment to purchasers for the agreed upon amount is evidence that their fraud was premeditated, consisting of a pattern and practice of their business model.

68.     As a direct and proximate result of Defendants' fraudulent representations and omissions, Plaintiff has been damaged in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus costs, interest, and attorney fees.

69.     Based upon Defendants' fraud, Plaintiff is entitled to an award of punitive damages and recovery of all legal fees in pursuing this cause of action.

### COUNT V - CIVIL CONSPIRACY

70.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

71.     Civil conspiracy is recognized by courts in Ohio.

72.     Defendant Jordan and Defendant Refaei maliciously conspired to induce Plaintiff to enter into a contract that the Defendants knew they would not honor.

73.     Defendant Jordan and Defendant Refaei conspired to induce Plaintiff to transfer One Hundred Thirty-Four Thousand Dollars ($134,000.00) to Defendant Jordan knowing that Defendant Jordan would not transfer ownership of the Linear Accelerator.

74.     Defendant Jordan and Defendant Refaei did deprive Plaintiff of One Hundred Thirty-Four Thousand Dollars ($134,000.00) without transferring ownership of the Linear Accelerator to Plaintiff.

75.     The decision to refuse to transfer ownership of the Linear Accelerator to Plaintiff was made by Defendant Refaei and constitutes a tortious interference with the contract between Plaintiff and Defendant Jordan.

76.     Defendant Refaei's decision to refuse to transfer ownership of the Linear Accelerator without refunding Plaintiff the One Hundred Thirty-Four Thousand Dollars ($134,000.00) paid

to Defendant Jordan is outside the scope of his authority or position as an officer of Defendant Jordan.

77.     By refusing to refund Plaintiff's One Hundred Thirty-Four Thousand Dollars ($134,000.00), Defendant Jordan and Defendant Refaei conspired to convert the Plaintiff's money to their own use.

78.     Defendant Refaei converted the One Hundred Thirty-Four Thousand Dollars ($134,000.00) to his own personal use, and he now exercises dominion and control over the entire One Hundred Thirty-Four Thousand Dollars ($134,000.00) independent of Defendant Jordan.

79.     Defendant Refaei's conversion of the One Hundred Thirty-Four Thousand Dollars ($134,000.00) to his own personal use and his dominion and control over the One Hundred Thirty-Four Thousand Dollars ($134,000.00) is outside the scope of his authority or position as an officer of Defendant Jordan.

80.     Plaintiff has been damaged in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00) as a result of the civil conspiracy.

81.     As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has been damaged in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus costs, interest, and attorney fees.

82.     Based upon Defendants' conspiracy, Plaintiff is entitled to an award of punitive damages and recovery of all legal fees in pursuing this cause of action.

### COUNT VI – CIVIL THEFT

83.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

11

84. Through their actions, Defendant Jordan and Defendant Refaei have acted in bad faith and have wrongfully converted assets belonging to Plaintiff, which Defendant Jordan and Defendant Refaei know belong to Plaintiff.

85. Plaintiff's assets converted by Defendant Jordan and Defendant Refaei are valued at One Hundred Thirty-Four Thousand Dollars ($134,000.00), the value of the Linear Accelerator.

86. Plaintiff's assets converted by Defendant Jordan and Defendant Refaei are valued at One Hundred Thirty-Four Thousand Dollars ($134,000.00), the value of the money taken by Defendants without transferring ownership of the Linear Accelerator.

87. Defendants' actions in converting Plaintiff's assets constitutes grand theft, a Fourth Degree Felony in the state of Ohio under Ohio Revised Code § 2913.02(B)(2) for theft.

88. Defendants' conversion and theft of property belonging to Plaintiff was a willful, wanton and an unjustified theft of Plaintiff's property that entitles Plaintiff to an award of treble damages and attorney fees pursuant to R.C. §2307.61(A)(1)(b)(ii), irrespective of whether the property is recovered by way of replevin or otherwise, is destroyed or otherwise damaged, is modified or otherwise altered, or is resalable at its full market price.

89. Defendants are civilly liable for liquidated damages in the State of Ohio pursuant to R.C. § 2307.61(A)(1)(b)(ii) because of their acts of theft.

90. As a direct and proximate result of Defendants' conversion and theft, Plaintiff has suffered damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), entitling Plaintiff to recover liquidated damages by statute in an amount equal to Four Hundred Two Thousand Dollars ($402,000.000), irrespective of whether Plaintiff recovers the One Hundred Thirty-Four Thousand Dollars ($134,000.00) by way of replevin or otherwise, and

irrespective of whether Plaintiff recovers the Linear Accelerator, even if the Linear Accelerator is resalable at its full market price.

91.     Plaintiff demands liquidated damages in the statutory amount of Four Hundred Two Thousand Dollars ($402,000.000), irrespective of whether Plaintiff recovers the One Hundred Thirty-Four Thousand Dollars ($134,000.00) by way of replevin or otherwise, and irrespective of whether Plaintiff recovers the Linear Accelerator, even if the Linear Accelerator is resalable at its full market price.

**COUNT VII – UNJUST ENRICHMENT**

92.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

93.     If the contract alleged herein and attached as Exhibit A is found to be illusory, Defendant Jordan and Defendant Refaei nevertheless wrongfully obtained One Hundred Thirty-Four Thousand Dollars ($134,000.00) from Plaintiff and continue to retain these funds under circumstances that would be unjust for Defendants to continue doing so.

94.     Plaintiff has suffered damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), as a result of the unjust enrichment bestowed upon Defendants.

**COUNT VIII – FIRST TORTIOUS INTERFERENCE WITH A CONTRACT**

95.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

96.     Defendant Refaei is an officer and member of Defendant Jordan with the responsibility and obligation to honor the company's contracts.

97.     Defendant Refaei was aware of the existence of the Contract between Defendant Jordan and Plaintiff.

13

98.     Defendant Refaei insisted that Defendant Jordan not transfer ownership of the Linear Accelerator after receiving all payments from Plaintiff, intending to cause Defendant Jordan to breach its Contract with Plaintiff.

99.     The only reason given by and through Defendant Refaei for not transferring ownership of the Linear Accelerator to Plaintiff was a demand for more money from Plaintiff to Defendant Jordan.

100.    There was no justification for Defendant Refaei to interfere with the contract between Defendant Jordan and Plaintiff, other than his own greed.

101.    Plaintiff has been damaged as a result of the activities of Defendant Refaei.

102.    Such activities on the part of Defendant Refaei constitute the tortious interference with a contract based upon malice and greed, entitling Plaintiff to damages, punitive damages, and attorney fees.

### COUNT IX – SECOND TORTIOUS INTERFERENCE WITH A CONTRACT

103.    Plaintiff realleges and incorporates all prior paragraphs of this Complaint as if fully set forth in this paragraph of the Complaint.

104.    Southwest Oncology Centers ("SWOC") is a cancer treatment center in Aguascalientes, Mexico.

105.    SWOC had a contract with Plaintiff to purchase the Linear Accelerator set forth in this case.

106.    SWOC did not have a contract or agreement with Defendants.

107.    While working with Plaintiff's representative in arranging to get the details of the Linear Accelerator, Dr. Gordon Grado of SWOC was falsely told by Defendant Refaei that Plaintiff

"had not paid the taxes" on the machine and therefore Defendants would not release the Linear Accelerator to be shipped to SWOC unless SWOC paid additional money.

108.    Defendant Refaei then told Dr. Gordon Grado that Defendants would not be denied the profit to be made on the contract between SWOC and Plaintiff with respect to the sale of the machine.

109.    Defendant Refaei told Dr. Gordon Grado that if SWOC did not pay more money to Defendant Jordan, SWOC would lose both the Linear Accelerator and the money SWOC had paid to Plaintiff to purchase the Linear Accelerator.

110.    Defendant Refaei stated that Plaintiff had "to pay his dues" before Defendant Jordan would release the Linear Accelerator to be shipped to SWOC.

111.    Defendant Refaei also stated that if he got sued, "then the deal would be off," and SWOC would lose both its money and the Linear Accelerator.

112.    Dr. Gordon Grado tried to make arrangements to have the machine removed and transported to a new location or to Mexico, where it would be used.

113.    Defendant Refaei refused to release the Linear Accelerator from storage, even though Plaintiff had fully paid Defendants for the Linear Accelerator.

114.    Defendant Refaei knew that SWOC was buying the machine from Plaintiff, and that a contract existed between SWOC and Plaintiff for the sale of the Linear Accelerator.

115.    Defendant Refaei knew that SWOC paid Plaintiff for the machine pursuant to a contract.

116.    Plaintiff is in breach of its contract with SWOC to provide a Linear Accelerator as a result of Defendant Refaei refusing to release the fully paid for Linear Accelerator unless either SWOC or Plaintiff pays Defendant Jordan more money.

15

117.    Defendant Refaei intentionally procured the breach of the contract between Plaintiff and SWOC by refusing to release the machine to Plaintiff after all money owed to Defendant Jordan had been paid.

118.    Defendant Refaei intentionally procured the breach of the contract between Plaintiff and SWOC by refusing to release the machine to SWOC after all money owed to Defendant Jordan had been paid.

119.    Defendant Refaei lacked any justification for causing the breach of the contract with SWOC, as Defendant Jordan had been paid in full for the Linear Accelerator.

120.    SWOC had previously done business with Defendant Jordan, by dealing with Defendant Refaei regarding the purchase of a Linear Accelerator, during which Defendant Refaei also threatened Dr. Gordon Grado with not delivering the prior Linear Accelerator that was purchased unless additional money was paid outside of the contract, even though no breach of the contract nor additional compensation was owed.

121.    SWOC has suffered significant financial losses due to Defendants' refusal to release the machine that Plaintiff purchased.

122.    Defendant Refaei is an officer and member of Defendant Jordan and was acting on behalf of Defendant Jordan at the time he procured the breach of the contract between SWOC and Plaintiff.

123.    Defendant Refaei insisted that Defendant Jordan not transfer ownership of the Linear Accelerator to SWOC after receiving all payments from Plaintiff, intending to cause Plaintiff to breach its Contract with SWOC.

16

124.     Defendant Refaei insisted that Defendant Jordan not transfer ownership of the Linear Accelerator to Plaintiff after receiving all payments from Plaintiff, intending to cause Plaintiff to breach its Contract with SWOC.

125.     There was no justification for Defendant Refaei or Defendant Jordan to interfere with the contract between Plaintiff and SWOC, other than his own greed.

126.     Plaintiff has been damaged as a result of the activities of Defendant Refaei and Defendant Jordan in causing the breach of the contract with SWOC.

127.     Such activities on the part of Defendant Refaei constitute the tortious interference with a contract based upon malice and greed, entitling Plaintiff to damages in the amount of One Hundred Forty Five Thousand Dollars ($145,000.00), plus damages for the loss of goodwill to Medical, Industrial and Scientific Products, Inc. in an amount to be determined at trial, punitive damages, and attorney fees.

**WHEREFORE**, Plaintiff Medical, Industrial and Scientific Products, Inc., an Alabama corporation, respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Jordan Medical Group, an Ohio corporation, and Defendant Suleiman Refaei as follows:

**AS TO COUNT I OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Jordan Medical Group, LLC, for damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus lost profits, loss of goodwill with the client to whom the Linear Accelerator would be sold, plus attorney fees, and costs, plus an award of punitive damages and recovery of all legal fees in pursuing this cause of action, plus statutory legal interest on the value of the money from the date of October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

17

**AS TO COUNT II OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Jordan Medical Group, LLC and Defendant Suleiman A. Refaei, jointly and severally, for damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus an award of punitive damages and recovery of all legal fees in pursuing this cause of action, plus statutory legal interest on the value of the money from the date of October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

**AS TO COUNT III OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Jordan Medical Group, LLC and Defendant Suleiman A. Refaei, jointly and severally, for damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus an award of punitive damages and recovery of all legal fees in pursuing this cause of action, plus statutory legal interest on the value of the money from the date of October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

**AS TO COUNT IV OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Jordan Medical Group, LLC and Defendant Suleiman A. Refaei, jointly and severally, for damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus an award of punitive damages and recovery of all legal fees in pursuing this cause of action, plus statutory legal interest on the value of the money from the date of October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

**AS TO COUNT V OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Jordan Medical Group, LLC and Defendant

Suleiman A. Refaei, jointly and severally, for damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus an award of punitive damages and recovery of all legal fees in pursuing this cause of action, plus statutory legal interest on the value of the money from the date of October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

**AS TO COUNT VI OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Jordan Medical Group, LLC and Defendant Suleiman A. Refaei, jointly and severally, for statutory damages in accordance with R.C. § 2307.61(A)(1)(b)(ii) in the amount of Four Hundred Two Thousand Dollars ($402,000.000), plus an award of punitive damages and recovery of all legal fees in pursuing this cause of action, plus statutory legal interest on the value of the money from the date of the theft, October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

**AS TO COUNT VII OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Jordan Medical Group, LLC for damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus an award of statutory legal interest on the value of the money from the date of October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

**AS TO COUNT VIII OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Refaei for damages in the amount of One Hundred Thirty-Four Thousand Dollars ($134,000.00), plus an award of punitive damages and recovery of all legal fees in pursuing this cause of action, plus statutory legal interest on the value of the money from the date of October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

**AS TO COUNT IX OF THE COMPLAINT**, Judgment in favor of Plaintiff Medical, Industrial and Scientific Products, Inc., and against Defendant Jordan and Defendant Refaei, jointly and severally, for lost profits in the amount of One Hundred Forty Five Thousand Dollars ($145,000.00), plus damages for the loss of goodwill to Medical, Industrial and Scientific Products, Inc. in an amount to be determined at trial, plus an award of punitive damages and recovery of all legal fees in pursuing this cause of action, plus statutory legal interest on the value of the money from the date of October 29, 2020, through the satisfaction of judgment, court costs and expenses; and

**AS TO EACH AND EVERY COUNT,** for such further relief in law or equity that this Court deems just and proper.

Respectfully submitted,

_____/s/ *John H. Phillips*_____
John H. Phillips (0043934)
Anthony B. Holman (0084130)
Trial Attorneys for Plaintiff
9521 Montgomery Road
Cincinnati, OH  45242
☏ (513) 985-2500
☏ FAX (513) 985-2503
Email:  JHP@PhillipsLawFirm.com
Email:  ABH@PhillipsLawFirm.com

## JURY DEMAND ENDORSEMENT

With the filing of this Complaint, Plaintiff hereby demands a trial by jury of the maximum number as to all issues so triable.

Respectfully submitted,

_____/s/ *John H. Phillips*_____
John H. Phillips (0043934)

**INSTRUCTIONS TO THE CLERK AS TO SERVICE OF PROCESS**

Please serve each Defendant via certified mail to the addresses listed in the caption of the Complaint.

/s/ *John H. Phillips*

John H. Phillips (0043934)
*Trial Attorneys for Plaintiff*

**DIRECTIONS TO THE CLERK FOR SERVICE OF PROCESS**
**FIRST CLASS MAIL WAIVER**

In accordance with Rule 4.6(C) and (D) of the Ohio Rules of Civil Procedure, should any Defendant refuse certified mail at the addresses listed in the caption of the Complaint, or if a United States certified or express mail envelope attempting service within or outside the state is returned with an endorsement stating that the envelope was unclaimed, Plaintiff respectfully requests that the Defendant(s) be served by first class mail at the addresses set forth in the caption of the Complaint to any Defendant refusing Certified Mail.

/s/ *John H. Phillips*

John H. Phillips (0043934)
*Trial Attorneys for Plaintiffs*

21

FILED DATE: 12/29/2020 1:47 PM   2020L013798

# Exhibit  A

# Exhibit  A

FILED DATE: 12/29/2020 1:47 PM 2020L013798

Medical, Industrial and Scientific Products, Inc., hereafter referred to as MISCORP, an Alabama corporation, with offices at 3335 N. Springfield Avenue, Chicago, IL, 60618, will enter into a purchase agreement with Jordan Medical Group (JMG), an Ohio corporation, with offices at 8933 Terwilligers Trail, Cincinnati, state of Ohio 45249, as follows: FIRST, MISCORP has purchased a linear accelerator from Jordan Medical Group, the unit is as described in Exhibit "A", as presented by Jordan Medical Group to MISCORP sent via email dated April 3, 2020; SECOND, MISCORP has agreed to pay Jordan Medical Group a purchase price of One Hundred and Thirty Thousand Dollars ($130,000.00); THIRD, Jordan Medical Group is keeping the linear accelerator in storage at the Planes Company located at 9823 Cincinnati Dayton Road, West Chester Township, Ohio); FOURTH, MISCORP has made the following payments as deposits to Jordan Medical Group, in a total amount of Seventy-Six Thousand and One Hundred and Sixteen Dollars ($76,116.00), as follows: (1) First deposit in the amount of Thirty-Six Thousand and Two Hundred and Six Dollars ($36,206.00); (2) Second deposit in the amount of Nineteen Thousand and Nine Hundred and Fifty Five Dollars ($19,955.00); (3) Third deposit in the amount of Nineteen Thousand and Nine Hundred and Fifty Five Dollars ($19,955.00); all deposits made from Bank of America to Jordan Medical Group account at U. S. Bank National Association, located at 425 Walnut Street, Cincinnati, Ohio; FIFTH, the linear accelerator is being purchased under the premises to have been in good working order until the day it was professionally removed from CAPE FEAR VALLEY MEDICAL CENTER 1638 OWEN DR FAYETTEVILLE, in the state of North Carolina; SIXTH, MISCORP has agreed to pay Jordan Medical Group One Thousand Dollars ($1,000.00) per month for the storage of the linear accelerator at the Planes Company, starting on June 2020; SEVENTH, MISCORP in agreement with Jordan Medical Group has inspected the linear accelerator at the Planes Company on October 6, 2020; EIGHT, MISCORP will make final payment of Fifty Three Thousand Eight Hundred and Eighty Four Dollars ($53,884.00) to Jordan Medical Group upon the signing of this present agreement; full ownership will be given to MISCORP upon confirmation of payment; NINTH, Jordan Medical Group will provide a clear bill of sale to MISCORP upon receipt of final payment and notify the Planes company in writing, with copy to MISCORP, that ownership of the linear accelerator has been granted in full to MISCORP; TENTH, MISCORP will pay Jordan Medical Group the storage fee of One Thousand Dollars ($1,000.00) per month, starting June 2020 through October 2020, for a total of Four Thousand Dollars ($4,000.00) by or before October 16th 2020; ELEVENTH, Jordan Medical Group agrees to transfer full control of the linear accelerator Varian model 21iX, serial number 1138, complete with all its components as were removed from its original owner, upon receipt of final storage payment; TWELFTH, this agreement is being signed by both parties on this the Twelfth day of October 2020.

Buyer: _____

Jose A. Rodriguez, President
MIS Corporation
Date: 10/12/20

Seller: _____

Suleiman A. Rafael, President
Jordan Medical Group
Date: 10/12/2020
Senior Medical Physics

FILED DATE: 12/29/2020 1:47 PM 2020L013798

Exhibit "A"

# JORDAN MEDICAL GROUP

## Business Development and Physics

P.O. Box 42216          Cincinnati, OH 45242     Fax 513-792-0155

| Facility: | | City: | |
|---|---|---|---|
| Contact Name: | | Tel. | |
| Who should we contact for any technical/specifications questions? | | | |
| Name: | | Tel. | |

### System Information & Availability

| | |
|---|---|
| Manufacturer | VARIAN |
| Model | 21 IX |
| Serial Number | |
| Date of Manufacture | |
| Installation Date | 8/1/2006 |
| When is it available for removal? | 1-Apr |

### Location & Contact Info:

| | |
|---|---|
| Facility name | |
| Address where located | |
| City, State | |
| Contact Person | |
| Telephone | |
| Technical Contact | |
| Telephone | |

### System Specifications:

| | |
|---|---|
| Photon Energies | 6/15 MV |
| Electron Energies | 6/9/12/18 MEV |
| Does it have a beamstopper? | NO |
| Does it have independent Jaws? | YES |
| If so, single or dual? | |
| Type of couch | EXACT |
| Photon-Electron Dose Rate | 600 |

### Software

| | |
|---|---|
| Console software version | VARIAN 8.01 |
| Does it have IMRT software? | YES |
| If so, does it have dMLC? | YES |
| Does it have autofield sequencing? | YES |
| 4DTC sw version and is it IGMA type | VERSION 13 |

### OBI

| | |
|---|---|
| Workstation sw version | OBI 1.5 |
| OBI original with machine or upgraded? | YES |
| All Phantoms and filters available? | YES |
| Does machine have Rapid Arc? | YES |
| Does machine have CB/CT and what V-sw | YES |
| Does it have SRS mode? | NO |

### Service:

| | |
|---|---|
| Name of service provider: | VARIAN |
| Contact name: | |
| Phone number: | |
| For how long? | SINCE INSTALL |
| Are the service records complete? | YES |
| Are they available for review? | YES |

### Condition

| | |
|---|---|
| Is it currently installed? | YES |
| Is it operational? | YES |
| Total beam hours (High Voltage): | 1857 |
| Current patient load | 18 |
| Does it have a klystron or magnetron? | KLYSTRON |
| Age of the klystron or magnetron | |
| Age of the RF Driver, if applicable | |
| Age of the waveguide | |
| Age of the gun/target | 2 YEARS |

### Spare parts:

| | |
|---|---|
| Is the spare parts kit complete? | YES |
| If not, what % is remaining? | |
| Are spares available along with system? | YES |

### Multileaf Collimator

| | |
|---|---|
| MLC Model | VER 8.1 |
| Number of Leaves | 120 LEAVES |
| MLC Software Version | VX WORKS 6.9 |
| MLC Manufacture Date | Jul-06 |

### Portal Imaging

| | |
|---|---|
| Manufacturer | |
| Model | 2006 MODEL |
| Date of Manufacture | |
| Date panel was last replaced | |

### Base Frame

| | |
|---|---|
| What type of base frame? | WILL FIT TRUEBEAM |
| If VEO, is it a "dropping floor?" | |
| Can it be removed along with system? | NO |

### Removal/Rigging:

| | |
|---|---|
| Is there a clear path for removal? | YES |
| Any special considerations? | |

Please describe:

PLEASE COMPLETE AND RETURN TO: ser@jordanmedgroup.com

FILED DATE: 12/29/2020 1:47 PM   2020L013798

# Exhibit B

# Exhibit B

FILED DATE: 12/29/2020 1:47 PM   2020L013798



1022 S. La Grange Road
La Grange, Illinois 60525
708-639-4320
Fax: 708-390-0665
john@fornarolaw.com

November 18, 2020

<u>SENT VIA USPS FIRST CLASS AND CERTIFIED MAIL</u>

Jordan Medical Group
Attention: Suleiman A. Rafaei
8933 Terwilligers Trail
Cincinnati, Ohio 45249

Re:     Demand for delivery of Linear Accelerator
          Medical Industrial and Scientific Products, Inc. v. Suleiman A. Rafaei and Jordan
          Medical Group (hereinafter, "JMG")

Dear Mr. Rafaei:

Please be advised that Fornaro Law is retained to represent the interests of Medical Industrial and Scientific Products, Inc. (hereinafter, "MIS Corp"), and to institute legal proceedings against you for the delivery of the linear accelerator purchased by MIS Corp.

As you are aware, on October 12, 2020, you entered into a contract with MIS Corp (hereinafter, the "Contract") whereby you agreed to sell, convey title, and transfer possession of a linear accelerator; Varian Model 21iX, Serial # 1138, complete with all its components, inclusive but not limited of its spare parts and manuals (hereinafter, the "Linear Accelerator") in exchange for payment of One Thousand and Thirty Thousand Dollars ($130,000.00). A true and correct copy of the Contract is attached hereto as <u>Attachment "A"</u>.

MIS Corp has made all of its payments pursuant to the Contract. Additionally, MIS Corp has fully compensated you $4,000 for storing the Linear Accelerator, as agreed per the Contract. In total, MIS Corp has paid you $134,000.00. Accordingly, MIS Corp has fully performed its obligations under the Contract. Yet, you are willfully refusing to convey title and transfer possession of the Linear Accelerator. As a result, you are in breach of the Contract.

Jordan Medical Group
November 18, 2020
Page 2 of 2



Further, it has been brought to my attention that you are contacting certain clients of MIS Corp. which is potentially interfering with MIS Corp's business relationships and is potentially undermining MIS Corp's business transactions.

Accordingly, this letter shall serve as formal demand for the immediate delivery of the Linear Accelerator and to immediately cease contacting clients of MIS Corp.

Should you fail to deliver the Linear Accelerator to MIS Corp within seven (7) days of this letter, then this firm has been authorized to immediately initiate legal action in this matter for its delivery. Any legal action will not only seek reimbursement for the sums claimed, but will also, seek reimbursement for attorneys' fees and court costs. As well as seek punitive damages for your willful refusal to deliver the purchased Linear Accelerator.

Very truly yours,

John Lara,
*Attorney at Law*

JL
Enclosure

FILED DATE: 12/29/2020 1:47 PM   2020L013798

FILED DATE: 12/29/2020 1:47 PM 2020L013798

# ATTACHMENT "A"

FILED DATE: 12/29/2020 1:47 PM    2020L013798

Medical, Industrial and Scientific Products, Inc., hereafter referred to as MISCORP, an Alabama corporation, with offices at 3335 N. Springfield Avenue, Chicago, IL, 60618, will enter into a purchase agreement with Jordan Medical Group (JMG), an Ohio corporation, with offices at 8933 Terwilligers Trail, Cincinnati, state of Ohio 45249, as follows: FIRST, MISCORP has purchased a linear accelerator from Jordan

*when?*

Medical Group, the unit is as described in Exhibit "A", as presented by Jordan Medical Group to MISCORP sent via email dated April 3, 2020; SECOND, MISCORP has agreed to pay Jordan Medical Group a purchase price of One Hundred and Thirty Thousand Dollars ($130,000.00); THIRD, Jordan Medical Group is keeping the linear accelerator in storage at the Planes Company located at 9823 Cincinnati Dayton Road, West Chester Township, Ohio); FOURTH, MISCORP has made the following payments as deposits to Jordan Medical Group, in a total amount of Seventy-Six Thousand and One Hundred and Sixteen Dollars ($76,116.00), as follows: (1) First deposit in the amount of Thirty-Six Thousand and Two Hundred and Six Dollars ($36,206.00); June 12, 2020 (2) Second deposit in the amount of Nineteen Thousand and Nine Hundred and Fifty Five Dollars ($19,955.00); July 22, 2020 (3) Third deposit in the amount of Nineteen Thousand and Nine Hundred and Fifty Five Dollars ($19,955.00); Sept 11, 2020 all deposits made from Bank of America to Jordan Medical Group account at U. S. Bank National Association, located at 425 Walnut Street, Cincinnati, Ohio; FIFTH, the linear accelerator is being purchased under the premises to have been in good working order until the day it was professionally removed from CAPE FEAR VALLEY MEDICAL CENTER 1638 OWEN DR FAYETTEVILLE, in the state of North Carolina; SIXTH, MISCORP has agreed to pay Jordan Medical Group One Thousand Dollars ($1,000.00) per month for the storage of the linear accelerator at the Planes Company, starting on June 2020; SEVENTH, MISCORP in agreement with Jordan Medical Group has inspected the linear accelerator at the Planes Company on October 6, 2020; EIGHT, MISCORP will make final payment of Fifty Three Thousand Eight Hundred and Eighty Four Dollars ($53,884.00) to Jordan Medical Group upon the signing of this present agreement; full ownership will be given to MISCORP upon confirmation of payment; NINTH, Jordan Medical Group will provide a clear bill of sale to MISCORP upon receipt of final payment and notify the Planes company in writing, with copy to MISCORP, that ownership of the linear accelerator has been granted in full to MISCORP; TENTH, MISCORP will pay Jordan Medical Group the storage fee of One Thousand Dollars ($1,000.00) per month, starting June 2020 through October 2020, for a total of Four Thousand Dollars ($4,000.00) by or before October 16th 2020; ELEVENTH, Jordan Medical Group agrees to transfer full control of the linear accelerator Varian model 21iX, serial number 1138, complete with all its components as were removed from its original owner, upon receipt of final storage payment; TWELFTH, this agreement is being signed by both parties on this the Twelfth day of October 2020.

Buyer: _____

Jose A. Rodriguez, President
MIS Corporation
Date: 10 / 12 / 20

Seller: _____

Suleiman A. Rafael, President
Jordan Medical Group
Date: 10/12/2020
senior Medical Physicist

Exhibit "A"

FILED DATE: 12/29/2020 1:47 PM   2020L013798

# JORDAN MEDICAL GROUP

## Business Development and Physics

P.O. Box 42216          Cincinnati, OH 45242   Fax 513-792-0155

| Facility: | City: |
|---|---|
| Contact Name: | Tel. |
| Who should we contact for any technical/specifications questions? | |
| Name: | Tel. |

### System Information & Availability

| | |
|---|---|
| Manufacturer | VARIAN |
| Model | 21 IX |
| Serial Number | |
| Date of Manufacture | |
| Installation Date | 9/1/2006 |
| When is it available for removal? | 1-Apr |

### Location & Contact Info:

| | |
|---|---|
| Facility name | |
| Address where located | |
| City, State | |
| Contact Person | |
| Telephone | |
| Technical Contact | |
| Telephone | |

### System Specifications:

| | |
|---|---|
| Photon Energies | 6/15 MV |
| Electron Energies | 6/9/12/18 MEV |
| Does it have a beamstopper? | NO |
| Does it have independent Jaws? | YES |
| If so, single or dual? | |
| Type of couch | EXACT |
| Photon-Electron Dose Rate | 600 |

### Software

| | |
|---|---|
| Console software version | VARIAN 9.01 |
| Does it have IMRT software? | YES |
| If so, does it have dMLC? | YES |
| Does it have autofield sequencing? | YES |
| 4DTC sw version and is it IGMA type | VERSION 13 |

### OBI

| | |
|---|---|
| Workstation sw version | OBI 1.6 |
| OBI orignal with machine or upgraded? | YES |
| All Phantoms and fiters available? | YES |
| Does machine have Rapid Arc? | YES |
| Does machine have CB/CT and what V-sw | YES |
| Does it have SRS mode? | NO |

### Service:

| | |
|---|---|
| Name of service provider: | VARIAN |
| Contact name: | |
| Phone number: | |
| For how long? | SINCE INSTALL |
| Are the service records complete? | YES |
| Are they available for review? | YES |

### Condition

| | |
|---|---|
| Is it currently installed? | YES |
| Is it operational? | YES |
| Total beam hours (High Voltage): | 1857 |
| Current patient load | 18 |
| Does it have a klystron or magnetron? | KLYSTRON |
| Age of the klystron or magnetron | |
| Age of the RF Driver, if applicable | |
| *Age of the waveguide* | |
| Age of the gun/target | 2 YEARS |

### Spare parts:

| | |
|---|---|
| Is the spare parts kit complete? | YES |
| If not, what % is remaining? | |
| Are spares available along with system? | YES |

### Multileaf Collimator

| | |
|---|---|
| MLC Model | VER 8.1 |
| Number of Leaves | 120 LEAVES |
| MLC Software Version | VX WORKS 6.9 |
| MLC Manufacture Date | Jul-05 |

### Portal Imaging

| | |
|---|---|
| Manufacturer | |
| Model | 2006 MODEL |
| Date of Manufacture | |
| Date panel was last replaced | |

### Base Frame

| | |
|---|---|
| What type of base frame? | WILL FIT TRUEBEAM |
| If VEO, is it a "dropping floor?" | |
| Can it be removed along with system? | NO |

### Removal/Rigging:

| | |
|---|---|
| Is there a clear path for removal? | YES |
| Any special considerations? | |

Please describe:

**PLEASE COMPLETE AND RETURN TO:**   sar@jordanmedgroup.com

FILED DATE: 12/29/2020 1:47 PM 2020L013798



| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>x *JMM Q 706 CG*  ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery  11/23/20 |
| 1. Article Addressed to:<br><br>Jordan Medical Group<br>Attention: Suleiman A. Rafaei<br>8933 Terwilligers Trail<br>Cincinnati, Ohio 45249 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |

9590 9402 5329 9154 3831 18

| 3. Service Type |  |
|---|---|
| ☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |

2. Article Number (Transfer from service label)

7018 1130 0001 6883 9448

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

7018 1130 0001 6883 9448

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)  $_____
☐ Return Receipt (electronic)  $_____
☐ Certified Mail Restricted Delivery  $_____
☐ Adult Signature Required  $_____
☐ Adult Signature Restricted Delivery  $_____
Postage
$
Total Pc
$
Sent To    Jordan Medical Group
Street a    Attention: Suleiman A. Rafaei
       8933 Terwilligers Trail
City, St    Cincinnati, Ohio 45249

*Joe Rodriguez*   Postmark Here

$7.05

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

# EXHIBIT C

From: "Jose A. Rodriguez" <jrodrig9457@me.com>
To: Suleiman Rafaei <sar@jordanmedgroup.com>
Subject: LINAC
Date: Tue, 06 Apr 2021 16:54:48 -0000

Suleiman,
I do not like to be involved in legal disputes, however, you have taken $130,000.00 plus storage fees, you have now caused big business losses and growing on a monthly basis.
I need you to return the $130,000.00 and the storage fees at once.
If you do not return the money we will proceed with all applicable charges.

R          r
1. You purposely misrepresented the equipment as 2006; the equipment tag reads 2005.
2. Your argument that the year is the year when the equipment is installed only exists in your mind.
3. You failed to keep the equipment under power, I do not know if damages have occurred to the equipment and I am not willing to take any chances. Restoring the vacuum may cost $10,000.00 or more.
4. You failed to perform your side of the contract. You did not have to sign the contract. You did not have to accept the payments but you did. You signed the contract just to get the money, planning all along not to perform the contract, as evidence will show.
5. You purposely have created this situation, ignoring on purpose your responsibilities as a signature of the contract and as the recipient of all the payments agreed upon as per the contract.
If you do not return     of the money, [                r                    d      r
    ], I will assume that you do not have any plans to return the money; I will proceed accordingly.